REBECCA J. WINTHROP (SBN 116386)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone:    (213) 892-9200
Facsimile:    (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com

RYAN E. MANNS (*pro hac vice*)
JASON I. BLANCHARD (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone:    (214) 855-8000
Facsimile:    (214) 855-8200
ryan.manns@nortonrosefulbright.com
jason.blanchard@nortonrosefulbright.com

*Attorneys for Roman Catholic Welfare Corporation of Oakland, Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523 WJL<br><br>Chapter 11 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND<br><br>Plaintiff,<br><br>v.<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, ADVENTUS, THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, AND THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND,<br><br>Defendants. | Adv. Pro. No. 24-04053 WJL<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND AND ADVENTUS TO DISMISS COMPLAINT**<br><br>Date:    March 4, 2025<br>Time:    10:30 a.m.<br>Judge:    Hon. William J. Lafferty, III<br>Place:    United States Bankruptcy Court<br>Courtroom 220<br>1300 Clay Street<br>Oakland, CA 94612 |

**TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND:**

PLEASE TAKE NOTICE that The Roman Catholic Welfare Corporation of Oakland ("RCWC"), The Roman Catholic Cemeteries of the Diocese of Oakland ("RCC"), and Adventus (collectively, the "Non-Debtor Defendants"), defendants in the above-captioned adversary proceeding, hereby submit this *Reply Memorandum in Support of the Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland and Adventus to Dismiss Complaint* (the "Reply") in opposition to the *Omnibus Response of the Official Committee of Unsecured Creditors to (I) Debtor's Motion to Dismiss Adversary Complaint for Declaratory Relief and (II) Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland and Adventus to Dismiss Complaint* (the "Response") [Docket No. 19], and in further support of the *Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland and Adventus to Dismiss Complaint* (the "Motion") [Docket No. 9], pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss the *Adversary Complaint for Declaratory Relief* (the "Complaint") filed against the Non-Debtor Defendants by the Official Committee of Unsecured Creditors of the Roman Catholic Bishop of Oakland (the "Committee"), on the grounds that the Complaint fails to state a claim upon which relief may be granted.

Dated: February 26, 2025

REBECCA J. WINTHROP
RYAN E. MANNS (*pro hac vice*)
JASON I. BLANCHARD (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP

By: /s/ Rebecca J. Winthrop
　　REBECCA J. WINTHROP
　　*Attorneys for Roman Catholic Welfare Corporation of Oakland, Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus*

DOCUMENT PREPARED
ON RECYCLED PAPER

296986281.6

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT ..........................................................................................................2

    A. The Committee's Blanket Request for Declaratory Relief that all of the Non-Debtor Defendants' Property Constitutes Property of the Estate Should Be Dismissed (Count 1) ........................................................................................ 2

        1. The Committee has Insufficiently Pleaded the Two Elements of an Alter Ego Theory of Liability Under the Heightened Pleading Standard of Rule 9(b). .......................................................................................... 2

            a. No Unity of Interest and Ownership Between the Debtor and Non-Debtor Defendants. ............................................................ 3

            b. Fraud or injustice has not been sufficiently alleged.................. 7

        2. Because the Committee's Substantive Consolidation Claim Must be Dismissed, This Court Should Exercise its Discretion in Dismissing the Committee's Companion Claim for Broad Declaratory Relief. ............. 9

        3. The Declaratory Relief Claim Does not Sufficiently Identify or Describe the Property Interests that are Controverted to Satisfy Rule 8's Pleading Requirements. ...................................................................... 11

    B. The Committee's Alter Ego Theory of Liability Does not Save its Claim for Substantive Consolidation and Must be Dismissed (Count 2)........................ 12

        1. Substantive Consolidation of the Debtor with the Non-Debtor Defendants is Foreclosed by the Bankruptcy Code and Supreme Court Precedent. ........................................................................................ 12

        2. The Committee Has Failed to Adequately Plead a Claim for Substantive Consolidation Under an Alter Ego Theory. ...................... 14

III. CONCLUSION.....................................................................................................16

Case: 24-04053   Doc# 25   Filed: 02/26/25   Entered: 02/26/25 19:39:57   Page 3 of 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Allan & Assocs. Ltd.*,
   445 F. Supp. 3d 42 (N.D. Cal. 2020) ...................................................................... 9

*In re Archdiocese of St. Paul & Minneapolis*,
   553 B.R. 693 (Bankr. D. Minn. 2016) .................................................................. 15

*In re Aroonsakool*,
   2014 WL 1273696 (B.A.P. 9th Cir. Mar. 28, 2014) ........................................ 13, 15

*Assoc. Vendors, Inc. v. Oakland Meat Co.*,
   210 Cal. App. 2d 825 (Cal. Ct. App. 1962) ............................................................ 2

*Avery v. Leya Techs, LLC (In re Prototype Eng'g & Mfg)*,
   628 B.R. 132 (Bankr. C.D. Cal. 2020) .................................................................. 11

*Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*,
   529 B.R. 455 ......................................................................................................... 10

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995) .......................................................................... 3

*Conde v. Sensa*,
   2016 WL 6082309 (S.D. Cal. Oct. 17, 2016) .......................................................... 6

*Corcoran v. CVS Health Corp.*,
   169 F.Supp.3d 970 (N.D. Cal. 2016) ....................................................................... 7

*Dalian Sunsmile Outdoor Co., Ltd. v. WTN, Inc.*,
   2024 WL 5369731 (C.D. Cal. Sept. 25, 2024) ........................................................ 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................................... 5

*In re DeFlora Lake Dev. Assocs., Inc.*,
   571 B.R. 587 (Bankr. S.D.N.Y. 2017) ................................................................... 10

*Dietz Int'l Pub. Adjusters of Cal, Inc. v. Evanston Ins. Co.*,
   2009 WL 10673937 (C.D. Cal. Dec. 14, 2009) ..................................................... 12

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ............................................................................... 5, 6

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) .................................................................................... 6

*Gerritsen v. Warner Bros. Entm't*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................................ 4, 6

DOCUMENT PREPARED
ON RECYCLED PAPER

Case: 24-04053   Doc# 25   Filed: 02/26/25   Entered: 02/26/25 19:39:57   Page 4 of 23

*Hood v. Handi-Foil Corp.*,
2024 WL 4008711 (N.D. Cal. Aug. 29, 2024)......................................................... 3

*Jackson v. CEVA Logistics*,
2020 WL 6743915 (N.D. Cal. Nov. 17, 2020)....................................................... 12

*In re Jackson*,
548 B.R. 353 (Bankr. N.D. Ga. 2016)................................................................. 10

*Joiner v. Ryder Sys.*,
966 F. Supp. 1478 (C.D. Ill. 1996) ...................................................................... 6

*Kelly v. Elec. Arts, Inc.*,
2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) ...................................................... 5

*Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*,
757 F.3d 1044 (9th Cir. 2014)........................................................................... 11

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
235 Cal. App.3d 1220 (Cal. Ct. App. 1991) ........................................................ 3

*In re MAEDC Mesa Ridge, LLC*,
334 B.R. 197 (Bankr. N.D. Tex. 2005) .............................................................. 13

*Matyas v. Summerkids, Inc.*,
2022 WL 17887608 (C.D. Cal. May 16, 2022) .................................................... 8

*McGraw-Edison Co. v. Preformed Line Products Co.*,
362 F.2d 339 (9th Cir. 1966)............................................................................... 9

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996)............................................................................. 12

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ............................................................................................ 9

*MH Pillars Ltd. v. Realini*,
2017 WL 916414 (N.D. Cal. Mar. 8, 2017).......................................................... 4

*Mou v. SSC San Jose Operating Co. LP*,
415 F. Supp. 3d 918 (N.D. Cal. 2019) ................................................................. 9

*NetApp, Inc. v. Nimble Storage*,
2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ........................................................ 6

*Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis*
*(In re Archdiocese of St. Paul & Minneapolis)*,
888 F.3d 944 (8th Cir. 2018)........................................................ 12, 13, 14, 15

*Reynolds v. Binance Holdings, Ltd.*,
481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................................. 8

*Rodriguez v. Old West Exp., Inc.*,
711 F. Supp. 3d 1182 (E.D. Cal. 2024)............................................................... 13

DOCUMENT PREPARED
ON RECYCLED PAPER

2969862814

Case 24-04053    Doc# 25    Filed: 02/26/25    Entered: 02/26/25 19:39:57    Page 5 of 23

*Rollins Burdick Hunter of So. Cal. v. Alexander & Alexander Servs.*,
   206 Cal. App. 3d 1 (Cal. Ct. App. 1988) ........................................................ 4

*Roman Catholic Archbishop v. Superior Court*,
   15 Cal. App. 3d 405 (Cal. Ct. App. 1971) ...................................................... 4

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) ........................................................... 3

*Save Access Acad. v. Multnomah Cty. Sch. Dist. No. 1J*,
   2019 U.S. Dist. LEXIS 40401 (D. Or. Mar. 13, 2019) ................................. 10

*SEC v. Hickey*,
   322 F.3d 1123 (9th Cir. 2003) ................................................................ 4, 5

*In re SK Foods, LP*,
   499 B.R. 809 (Bankr. E.D. Cal. 2013) ................................................. 13, 15

*Smith v. Simmons*,
   638 F. Supp. 2d 1180 (E.D. Cal. 2009) ......................................................... 7

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal. App. 4th 523 (Cal. Ct. App. 2000) ........................................ 3, 4, 6, 7, 8

*Srinvasan v. Kenna*,
   2019 WL 1118123 (N.D. Cal. Mar. 11, 2019) ............................................... 3

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
   2024 WL 219331 (N.D. Cal. May 14, 2024) ............................................... 4, 6

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 9

*Takeda Pharmaceutical Co., Ltd. v. Mylan Inc.*,
   62 F. Supp. 3d 1115 (N.D. Cal. 2014) ..................................................... 9, 10

*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*,
   217 Cal. App. 4th 1096 (Cal. Ct. App. 2013) ............................................. 3, 4

*In re Trujillo*,
   626 B.R. 59 (Bankr. S.D. Fla. 2019) ........................................................... 10

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ....................................................................... 2

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ......................................................................... 2

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................... 2

*Wady v. Provident Life and Accident Ins. Co. of America*,
   216 F. Supp. 2d 1060 (C.D. Cal. 2002) ......................................................... 3

DOCUMENT PREPARED
ON RECYCLED PAPER

296986281.6

*Walsh v. Kindred Healthcare*,
    798 F. Supp. 2d 1073 (N.D. Cal. 2011) ................................................................ 3, 8

*Xyience Bev. Co. LLC v. Statewide Bev. Co. Inc.*,
    2015 WL 13333486 (C.D. Cal. Sept. 24, 2015) ..................................................... 4, 7

**Rules and Statutes**

11 U.S.C. § 105(a) ....................................................................................................... 12

11 U.S.C. § 541 ...................................................................................................... 10, 11

11 U.S.C. § 543 ........................................................................................................... 10

11 U.S.C. § 1112(c) .................................................................................................... 11

28 U.S.C. § 2201(a) .............................................................................................. 2, 9, 11

Fed. R. Civ. P. Rule 8 ........................................................................................... 11, 12

Fed. R. Civ. P. Rule 9(b) .......................................................................................... 2, 3

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 16

DOCUMENT PREPARED
ON RECYCLED PAPER

296986281.6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT[1]

Nonprofit non-debtor organizations, like the Non-Debtor Defendants, may not be forced into bankruptcy against their will through substantive consolidation. To allow the Committee to do so would elevate a bankruptcy court's equitable powers over the Bankruptcy Code's express prohibition on involuntary bankruptcy cases against nonprofits. On this basis, the Court should dismiss the Committee's claim for substantive consolidation (Count 2) against the Non-Debtor Defendants as a matter of law. Rather than directly confront this reasoning, the Committee pivots to a purported "alter ego" theory – not mentioned once in the Complaint but repeated throughout the Response – as an exception to substantive consolidation in a last ditch effort to save its claim. But the alter ego doctrine too is an equitable remedy that may not be invoked to override the explicit mandates of the Bankruptcy Code.

Even if an alter ego "exception" could apply, it fails here for several reasons. First, an alter ego relationship exists only when the dominated entity effectively has no will or existence of its own except as a tool for the controlling entity. Every facet of the dominated entity's business from its day-to-day operations to its policies must be dictated by the controlling entity. The handful of alleged connections between the Debtor and Non-Debtor Defendants – the presence of a few shared officers and directors, shared administrative services, a common webpage, approval required for major capital expenditures, involvement in financing, intercompany guarantees, and authority to appoint board members – fall short of the criteria necessary to make this showing. Second, some wrong or abuse arising from the Non-Debtor Defendants' corporate separateness must be alleged, not merely the Committee's inability to reach assets that could be available to satisfy creditor claims. Though the Committee highlights the Bishop's alleged power to control the Non-Debtor Defendants and their assets, it does not point to *any exercise of that authority* over them that resulted in a fraud or injustice to creditors.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Complaint or Motion, as applicable.

DOCUMENT PREPARED
ON RECYCLED PAPER    296986281.6

The Committee fares no better in its attempt to salvage its claim for declaratory relief (Count 1), *i.e.* that all of the Non-Debtor Defendants' property constitutes property of the estate. Without identifying what property interests are controverted, the Committee asserts it has an independent claim to determine any and all of the Debtor's and Non-Debtor Defendants' property interests. But in support, the Committee relies on the same flawed alter ego theory and same scant connections between the Debtor and Non-Debtor Defendants on which the Committee relies for substantive consolidation. The Declaratory Judgment Act provides courts with the discretion not to consider duplicative claims when the use of judicial resources would be useful in resolving discrete legal issues. Those considerations weigh in favor of this Court exercising its discretion here to dismiss the Committee's duplicative claim for declaratory relief.

## II.

## ARGUMENT

A. <u>The Committee's Blanket Request for Declaratory Relief that all of the Non-Debtor Defendants' Property Constitutes Property of the Estate Should Be Dismissed (Count 1)</u>

> 1. *The Committee has Insufficiently Pleaded the Two Elements of an Alter Ego Theory of Liability Under the Heightened Pleading Standard of Rule 9(b).*

Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to plead allegations of fraud or mistake with particularity, meaning a plaintiff must identify the "who, what, when, where and how of the misconduct charged." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). A claim "grounded in fraud" and averments of fraud must be plead with particularity, even if fraud is not a required element of that claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–1104 (9th Cir. 2003) (applying Rule 9(b) to claims based on violations of California law even though fraud was not an element of the statutes on which the plaintiff relied).

Although the alter ego doctrine "does not depend on the presence of actual fraud, it is designed to prevent what would be fraud or injustice, if accomplished." *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838 (Cal. Ct. App. 1962). Accordingly, courts in the

Document Prepared on Recycled Paper

Ninth Circuit apply Rule 9(b)'s heighted pleading requirements to allegations of an alter ego relationship. *See, e.g.*, *Hood v. Handi-Foil Corp.*, 2024 WL 4008711, at *3–4 (N.D. Cal. Aug. 29, 2024) (dismissing claims for failing to satisfy Rule 9(b) due to the lack of specific factual averments in support of the plaintiff's alter ego theory); *Sandoval v. Ali,* 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (imposing a heightened pleading standard, stating that "a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each" (quoting *Neilson v. Union Bank of California*, N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003)); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011) (setting out the Rule 9(b) standard and then concluding that plaintiffs failed to allege specific facts sufficient to invoke the alter ego doctrine).

Moreover, there is a "strong presumption" against disregarding corporate separateness based on the alter ego doctrine. *Srinvasan v. Kenna*, 2019 WL 1118123, at *2 (N.D. Cal. Mar. 11, 2019). Indeed, alter ego is an "extreme remedy" that should only be applied in "exceptional circumstances." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).

To invoke the alter ego doctrine under California law, a plaintiff must allege (1) there is such a unity of interest and ownership between two entities that their separate identities do not in reality exist, and (2) failure to disregard their separate identities would result in fraud or injustice. *Walsh*, 798 F. Supp. 2d at 1082 (citing *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) and *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (Cal. Ct. App. 2000)).[2]  The concept of "alter ego" liability is not mentioned once in the Complaint, and in any event, neither element of that theory is sufficiently pleaded.

### a.    No Unity of Interest and Ownership Between the Debtor and Non-Debtor Defendants.

To satisfy the first element, courts typically require the plaintiff to show "such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind,

---

[2] In California, courts apply common principles to determine alter ego liability regardless of whether the plaintiff seeks to impose liability on a shareholder, a parent company, or companies forming a single enterprise. *See Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal. App. 4th 1096, 1107-1108 (Cal. Ct. App. 2013); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App.3d 1220, 1249-50 (Cal. Ct. App. 1991).

DOCUMENT PREPARED
ON RECYCLED PAPER

will or existence of its own and is but a business conduit for its principal." *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal. App. 4th 1096, 1107–1108 (Cal. Ct. App. 2013). When a corporation "dictates every facet" of another corporation's business "from broad policy decisions to routine matters of day-to-day operations" the unity of interest prong is satisfied. *See Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104, 1138, 1142 (C.D. Cal. 2015). However, "merely directing macro decisions is insufficient." *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2024 WL 219331, at *12 (N.D. Cal. May 14, 2024). There must be much "more than that amount of control of one corporation over another which mere common ownership and directorship would indicate." *Rollins Burdick Hunter of So. Cal. v. Alexander & Alexander Servs.*, 206 Cal. App. 3d 1, 9 (Cal. Ct. App. 1988).

Factors suggesting a unity of interest include "the commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (Cal. Ct. App. 1971). Other factors include "inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.

Though no one factor governs, the Ninth Circuit has held that "ownership" of "at least a portion of a corporation" is "a pre-requisite to alter ego liability, and not a mere factor or guideline." *SEC v. Hickey*, 322 F.3d 1123, 1128–29 (9th Cir. 2003) (internal quotations omitted) (citing to California law, the Ninth Circuit rejected the plaintiff's argument that an alter ego relationship between the defendant and corporation could be shown even though the defendant did not own any portion of it); *MH Pillars Ltd. v. Realini,* 2017 WL 916414, at *12-13 (N.D. Cal. Mar. 8, 2017) (rejecting enterprise theory of alter ego liability on a motion to dismiss based on, among other things, the plaintiff's failure to plead ownership among the alleged corporate alter egos); *Xyience Bev. Co. LLC v. Statewide Bev. Co. Inc.*, 2015 WL 13333486, at *7 (C.D. Cal. Sept. 24, 2015) (holding that failure to plead an ownership interest between the alleged corporate alter egos meant that the plaintiff's theory of alter ego liability "fails at the first step").

DOCUMENT PREPARED
ON RECYCLED PAPER

The Committee's allegations of the affiliations between the Debtor and the Non-Debtor Defendants fall woefully short of the specific conduct necessary to satisfy the unity of interest element of alter ego.

First, the Committee does not allege an ownership interest by the Debtor in any of the Non-Debtor Defendants, or vice versa. In fact, the Non-Debtor Defendants' corporate organizational documents show the Debtors do not hold such interests. *See* Motion, at pp. 3-5 (citing the Non-Debtor Defendants' corporate organizational documents). This alone is fatal to the Committee's alter ego theory. *See Hickey*, 322 F.3d at 1128–29.

Second, the Committee does not allege that the Debtor was involved in the Non-Debtor Defendants' day-to-day decision-making or internal affairs, let alone that the Debtor directed every facet of their respective businesses. Rather, according to the Complaint, at times, the Bishop allegedly made policy and macro–level decisions for the Diocese that affected the Non-Debtor Defendants. *See, e.g.,* (Compl. ¶ 38) (███████████████████████████████████████████████████████████████████████████); (¶ 79) (███████████████████████████████████████████); (¶ 86) (Bishop ████████████████████ to fund Diocesan projects, including the expansion of RCC); (¶¶ 93–94) (Bishop spearheaded fundraising to benefit Diocesan initiatives ██████████████████████████████████████████).[3] This type of activity is insufficient to show an alter ego relationship between the Debtor and Non-Debtor Defendants. *See, e.g., Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) ("[a] parent corporation may be

---

[3] The Committee insists that the Court must accept as true its unfounded allegations that the Bishop had the plenary power to dispose of the Non-Debtor Defendants' assets based on cherry-picked language in the Offering Memo and Credit Agreement about his authority over "juridic persons." *Compare* Response at p. 13, n.7 *with* Motion at pp. 17-18 (discussing text of Offering Memo and Credit Agreement). But this Court need not accept as true allegations that are contradicted by the documents incorporated by reference in the Complaint, or draw inferences unsupported by the text of those documents. *See* Motion at p. 10 (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 1005-06 (9th Cir. 2010) (dismissing ERISA claim based in part on documents incorporated by reference that contradicted allegations in the complaint); *see also Kelly v. Elec. Arts, Inc.*, 2015 WL 1967233, at *8 (N.D. Cal. Apr. 30, 2015) ("the inference that defendants used the term [de-risk] to promise the elimination of technological risks is contradicted by the documents which plaintiffs incorporate into their complaint by reference and is therefore entitled to no presumption of truth."). The Committee offers no rebuttal to the Non-Debtor Defendants' argument that the Offering Memo and Credit Agreement are incorporated by reference in the Complaint. Nor does the Committee ever explain why each of the Non-Debtor Defendants should be considered a "juridic person."

Case: 24-04053   Doc# 25   Filed: 02/26/25   Entered: 02/26/25 19:39:57   Page 12 of 23

directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego"); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2d Cir. 1995) (finding no alter ego liability where parent company's approval required for leases, major capital expenditures, and the sale of subsidiary assets); *Sun Grp. U.S.A. Harmony City, Inc.*, 2024 WL 2193311, at *13 (holding guaranty by the parent company of its subsidiary's loans and other obligations, providing funding for the subsidiary, filing consolidated annual reports referring to the subsidiary's assets and its own, and directing major macro decisions for the subsidiary did not show alter ego); *Joiner v. Ryder Sys.*, 966 F. Supp. 1478, 1485 (C.D. Ill. 1996) (finding no alter ego liability where parent approved subsidiaries' acquisitions and capital budget); *Sonora Diamond Corp.*, 83 Cal. App. 4th at 546-47 (holding parent company's involvement in financing of its subsidiaries' mining operation, guaranty of key financial obligations, and ongoing financial support insufficient to show alter ego). Indeed, the allegations say nothing about the day-to-day management of any of the Non-Debtor Defendants.

_Third_, ████████████████████████████████ for the Non-Debtor Defendants (Compl. ¶¶ 44 48, 49) and the presence of some shared directors and officers over a 60-year period (¶¶ 51-55) do not support alter ego liability. Courts have routinely found these types of allegations insufficient to establish an alter ego relationship. *See, e.g., Unocal Corp.*, 248 F.3d at 927-28 (no alter ego relationship found where parent company guaranteed loans for its subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in its pricing decisions); *Conde v. Sensa*, 2016 WL 6082309, at *3 (S.D. Cal. Oct. 17, 2016) (allegations of control based on shared directors "falls well short of establishing the required extraordinary unity of interest and ownership" between the defendants and the corporation); *Gerritsen*, 116 F. Supp. 3d at 1138-1139 (overlap between directors or executive leadership was not "suggestive of a unity of interest and ownership" but rather "a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary.").

_Fourth_, a common website (Compl. ¶¶ 71-72) and shared administrative functions (¶¶ 9, 79) are not indicative of an alter ego relationship. *See, e.g., NetApp, Inc. v. Nimble Storage*, 2015

DOCUMENT PREPARED
ON RECYCLED PAPER

2969862816

WL 400251, at *6 (N.D. Cal. Jan. 29, 2015) (shared administrative functions not indicative of an alter ego relationship); *Corcoran v. CVS Health Corp.*, 169 F.Supp.3d 970, 984 (N.D. Cal. 2016) ("[C]ourts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos.").

Fifth, the Committee's speculative argument that █████████████████████████ ███████████████ does not show an alter ego relationship. Response at pp. 15, 20. In fact, the Committee does not allege that any of the Non-Debtor Defendants actually deposited funds in the DLF ██████████████████████, only that the "internal savings and loan program owned and operated by the Debtor. . . requires the Non-Debtor [Defendants] (among others) to deposit their excess funds with DLF for the benefit of the churches, schools, and cemeteries within the Diocese." (Compl. ¶ 89). The Committee's reliance on a one-time historical division of property between RCWC and the Debtor at the Pope's direction fares no better. Indeed, the Committee does not allege that the *Debtor* had a hand in dividing RCWC's property, or that any property belonging to RCC or Adventus was likewise divided. (Compl. ¶¶ 58, 62–64). Without specific factual allegations of commingling or diversion of assets, the Committee's allegations do not support alter ego liability sufficient to withstand dismissal. *See, e.g., Dalian Sunsmile Outdoor Co., Ltd. v. WTN, Inc.*, 2024 WL 5369731, at *4 (C.D. Cal. Sept. 25, 2024) (allegations of payments directed by the defendants to themselves and others were insufficiently detailed to show how the defendants commingled or diverted corporate funds for the purpose of imposing alter ego liability); *Xyience Bev. Co. LLC*, 2015 WL 13333486, at *7 (conclusory allegations that the alleged alter egos "commingled and intermingled" certain funds transferred by the counterclaimant were insufficiently detailed to support the unity of interest element of alter ego).

        **b.**    **Fraud or injustice has not been sufficiently alleged.**

To satisfy the second alter ego element, the plaintiff must show the corporate form was misused "to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538. "[B]ad faith conduct on the part of the defendants" must be shown. *See Smith v. Simmons*, 638 F. Supp. 2d 1180, 1192 (E.D. Cal. 2009) (rejecting alter ego for failure to show bad faith or any fraudulent conduct in the

DOCUMENT PREPARED
ON RECYCLED PAPER

defendant's dealings with the plaintiff); *see also Matyas v. Summerkids, Inc.*, 2022 WL 17887608, at \*13 (C.D. Cal. May 16, 2022) (granting defendant's motion to dismiss claim predicated on alter ego liability because the plaintiff failed to allege some involvement by the defendant in his co-defendants' bad faith conduct.

According to the Complaint, the Bishop had the authority to control the Non-Debtor Defendants and their assets (without providing meaningful detail about what those assets are) based on statements about his powers over "juridic persons" derived from the Offering Memo and Credit Agreement. (Compl. ¶¶ 79, 100). Even if accepted as true,[4] the Complaint does not allege that this authority the Bishop purportedly possessed over the Non-Debtor Defendants *was actually exercised* to cause a past fraud or injustice. *See Reynolds v. Binance Holdings, Ltd.*, 481 F. Supp. 3d 997, 1008–09 (N.D. Cal. 2020) (holding that the plaintiff's alter ego liability theory must fail because he failed to allege any specific bad faith conduct by the defendants that would make it equitable for them to hide behind the corporate form); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d at 1083 (holding that plaintiffs' failure to allege specific facts of an abuse of the corporate form as to certain healthcare facility defendants meant that the fraud or injustice element of alter ego had not been sufficiently alleged).

In fact, missing from the Complaint are any allegations of bad faith by the Non-Debtor Defendants or that an inequitable result would occur if the Court declines to impose alter ego liability on the Non-Debtor Defendants. Rather, the Committee alleges that the Debtor's unidentified property has been placed beyond the reach of Survivors and should be made available to increase the assets available to satisfy their claims. (Compl. ¶¶ 6, 124). But some wrong or abuse arising from the Non-Debtor Defendants' corporate separateness must be alleged, not merely the inability to reach assets of a non-profit – one with a shared missing of advancing the mission of the larger Catholic church – that might be available to satisfy creditor claims. *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th at 539 ("The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting

---

[4] The Non-Debtor Defendants submit that these allegations are contradicted by the text of the Offering Memo and Credit Agreement. *See* Motion at pp. 17-18.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.

2   Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.").

3      The failure to plead this element of the alter ego doctrine requires dismissal. *See, e.g., Apple*

4   *Inc. v. Allan & Assocs. Ltd.,* 445 F. Supp. 3d 42, 55–56 (N.D. Cal. 2020) (generalized allegations

5   of an injustice that would result if one of the alleged alter egos was allowed to hide behind the

6   corporate form were insufficient to satisfy the second element of the alter ego doctrine for the other

7   two defendants); *Mou v. SSC San Jose Operating Co. LP*, 415 F. Supp. 3d 918, 931 (N.D. Cal.

8   2019) (allegations that the defendants operated as a single business for the purpose of "lining their

9   pockets with money" and "evading liability" and "hiding money" were too vague and conclusory

10   to support a plausible inference they abused the corporate privilege sufficient to show an inequitable

11   result).

12         *2.*   *Because the Committee's Substantive Consolidation Claim Must be*

13            *Dismissed, This Court Should Exercise its Discretion in Dismissing the*

14            *Committee's Companion Claim for Broad Declaratory Relief.*

15      The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal

16   relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), not that it must do so.

17   Courts have interpreted this text "to confer on federal courts unique and substantial discretion in

18   deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

19   118, 136 (2007) (internal citations omitted). This discretion enables courts "to make a reasoned

20   judgment whether the investment of judicial time and resources in a declaratory action will prove

21   worthwhile in resolving a justiciable dispute." *Takeda Pharmaceutical Co., Ltd. v. Mylan Inc.*, 62

22   F. Supp. 3d 1115 (N.D. Cal. 2014) (internal citations omitted).

23      Courts have exercised discretion to issue a declaratory judgment "(1) when the judgment

24   will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will

25   terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

26   proceeding." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir.

27   1966) (internal quotations omitted). Consequently, a plaintiff's request for declaratory relief that is

28   duplicative of other claims is frequently dismissed when related claims are dismissed. *Swartz v.*

*KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (affirming district court's dismissal of declaratory relief claim on the grounds that it was "merely duplicative" of plaintiff's other causes of action); *Save Access Acad. v. Multnomah Cty. Sch. Dist. No. 1J*, 2019 U.S. Dist. LEXIS 40401, at *11 (D. Or. Mar. 13, 2019) (declining to issue declaratory judgment on claims duplicative of others dismissed by the court); *Takeda Pharmaceutical Co., Ltd. v. Mylan Inc.*, 62 (dismissing declaratory judgment claim because it would not resolve any issues that adjudication of the other counts would not otherwise resolve).

The Non-Debtor Defendants do not dispute that a plaintiff may bring a claim for declaratory relief that *specifically identified property* constitutes property of a debtor's bankruptcy estate as a companion to a claim to enforce rights in that property. *See* Response at p. 8 (citing *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 598–99 (Bankr. S.D.N.Y. 2017) (denying motion to dismiss the debtor's adversary proceeding seeking turnover under section 543 of the Bankruptcy Code of $207,116 in an escrow account as property of the estate and a companion claim for a determination of whether those escrow funds in fact constitute property of the estate) and *In re Trujillo*, 626 B.R. 59, 73 (Bankr. S.D. Fla. 2019) (granting judgment in favor of the chapter 7 trustee on his claims for turnover of the debtor's ownership interests in certain corporate defendants and a determination that those interests constitute property of the estate); *see also* Motion at p. 21 (citing *Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*, 529 B.R. 455, 470-471 (relying on the Ninth Circuit BAP's decision in *Stokes* among other law for the proposition that a claim for a determination of whether certain property constitutes property of the estate is not a substantive claim for relief and must be tied to a cause of action for enforcement of rights to that property, for example in the form of claims for the avoidance of fraudulent transfers or turnover) and *In re Jackson*, 548 B.R. 353, 380 (Bankr. N.D. Ga. 2016) (also relying on *Stokes* and other Ninth Circuit law for the principle that a cause of action does not exist under section 541 of the Bankruptcy Code and courts do not ordinarily consider whether property is or is not estate property unless raised in the context of specific relief to establish rights in that property).

Here, however, the Committee seeks a standalone determination that all of the Non-Debtor Defendants' property qualifies as property of the Debtor's estate, which is duplicative of the

DOCUMENT PREPARED
ON RECYCLED PAPER
296986281-6

Committee's claim for substantive consolidation of the Non-Debtor Defendants with the Debtor. Both claims are based on an alter ego theory of liability. Response at pp. 10–16 (Count I, Declaratory Relief ) and pp. 19–23 (Count II, Substantive Consolidation). Adjudication of the Committee's substantive consolidation claim would necessarily involve the Court's determination of which property belonging to the Non-Debtor Defendants would constitute property of the estate. *See* Motion at p. 11 (citing *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1050 (9th Cir. 2014) (finding that non-debtor's foreign real property became property of the bankruptcy estate as a result of substantive consolidation order); *Avery v. Leya Techs, LLC (In re Prototype Eng'g & Mfg)*, 628 B.R. 132, 146 (Bankr. C.D. Cal. 2020) ("*Bonham* supports the proposition that upon issuance of a substantive consolidation order, the property of a consolidated non-debtor becomes property of the estate under 11 U.S.C. § 541."). For the reasons discussed below, the Non-Debtor Defendants submit that this Court should dismiss the Committee's claim for substantive consolidation. Consequently, the Committee's declaratory relief claim should also be dismissed.

Finally, the Bankruptcy Code prohibits the involuntary liquidation of nonprofit entities. *See* 11 U.S.C. § 1112(c). The Committee should not be permitted to use the Declaratory Judgment Act as an end run around this statutory prohibition by effectively asking the Court to force the Non-Debtor Defendants to liquidate their assets for the benefit of creditors.

3.     *The Declaratory Relief Claim Does not Sufficiently Identify or Describe the Property Interests that are Controverted to Satisfy Rule 8's Pleading Requirements.*

The Complaint fails to allege with any meaningful specificity what property interests of the Non-Debtor Defendants are controverted. For example, the Committee alleges that RCC operates and administers several diocesan cemeteries, mortuaries, mausoleums, and a crematory from land owned by the Debtor (Compl. ¶ 30), provides related burial services for the faithful of the Roman Catholic Church (*see* RCC Bylaws § 2; RCC AOI § II. A), ███████████████████████████████████████. (Compl. ¶ 101). Without identifying what property RCC owns, the Committee asserts in a conclusory fashion that the Debtor exerts

Document Prepared on Recycled Paper

2969862816

"dominance and control" over all RCC's and the other Non-Debtor Defendants' "Property"[5] in which the Debtor allegedly holds certain unspecified equitable and legal interests (*Id.* ¶ 113).

These allegations leave RCC guessing what property the Committee is asking the Court to determine RCC owns, where that property is located, and the nature of the interests the Debtor allegedly has in that unidentified property. Without this basic information, RCC cannot adequately prepare for discovery and a defense to the Committee's claim. *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); *Dietz Int'l Pub. Adjusters of Cal, Inc. v. Evanston Ins. Co.*, 2009 WL 10673937, at * 3 (C.D. Cal. Dec. 14, 2009) (describing the purpose of Rule 8(a) is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer and prepare an adequate defense) (internal citations and quotations omitted). Moreover, the Committee's indiscriminate references to the Non-Debtor Defendants without describing their respective property interests violates the Ninth Circuit's prohibition on group pleading. *See, e.g., Jackson v. CEVA Logistics*, 2020 WL 6743915, at * (N.D. Cal. Nov. 17, 2020) (allegations that lump multiple defendants do not put individual defendants on notice of the conduct upon which the claims against them are based as Rule 8 requires).

## B. The Committee's Alter Ego Theory of Liability Does not Save its Claim for Substantive Consolidation and Must be Dismissed (Count 2)

### 1. Substantive Consolidation of the Debtor with the Non-Debtor Defendants is Foreclosed by the Bankruptcy Code and Supreme Court Precedent.

The Committee does not seriously challenge *St. Paul*'s central holding that based on the Supreme Court's decision in *Law v. Siegel*, bankruptcy courts lack the equitable authority under section 105(a) of the Bankruptcy Code to order substantive consolidation of a debtor with nonprofit non-debtors against their will because that would violate section 303(a)'s prohibition on involuntary bankruptcies against nonprofits. *See Official Comm. of Unsecured Creditors v.*

---

[5] The Complaint defines "Property" as the "assets of the Non-Debtor [Defendants], including their cash, investments and real estate assets" (*Id.* ¶ 5).

Document Prepared
on Recycled Paper

29698628.1-6

1  *Archdiocese of St. Paul & Minneapolis* (*In re Archdiocese of St. Paul & Minneapolis*), 888 F.3d

2  944, 947–48 (8th Cir. 2018). Instead, the Committee argues that nonprofit non-debtor entities like

3  the Non-Debtor Defendants may nevertheless be subject to substantive consolidation so long as

4  they qualify as alter egos of the Debtor. *See* Response at 17 (citing *St. Paul*, 888 F.3d at 953).

5  This argument overlooks that *St. Paul* did not decide that an "alter ego" exception applies

6  to override the Bankruptcy Code's express prohibition on forcing nonprofit non-debtors into

7  bankruptcy. *St. Paul*, 888 F.3d at 953 ("We leave for another day the issue of whether a non-profit

8  non-debtor that is the alter ego, under state law, of the debtor, or has been formed as part of a

9  fraudulent scheme, such as a Ponzi scheme, can be consolidated."). Regardless, it is unclear how a

10  finding of alter ego could result in the transformation of the nature or the character of a nonprofit

11  organization to a commercial enterprise no longer protected from involuntary bankruptcy. *See, e.g.*,

12  *In re MAEDC Mesa Ridge, LLC*, 334 B.R. 197, 201-202 (Bankr. N.D. Tex. 2005) ("A non-profit

13  charitable organization that participates in commercial activity is not considered a 'moneyed,

14  business, or commercial corporation' within the meaning of § 303(a), simply by participation in

15  such activity, but must be evaluated based upon the nature and character of its organization and the

16  activity in which it actually engages."). Absent allegations that the Non-Debtor Defendants are

17  disguised for–profit enterprises not entitled to the protections of section 303(a), the Eighth Circuit's

18  reasoning in *St. Paul* should apply with equal force to bar the application of the equitable remedy

19  of alter ego[6] from circumventing the Bankruptcy Code's express prohibition on involuntary

20  bankruptcies.

21  Furthermore, Ninth Circuit courts apply the traditional alter ego factors to determine

22  whether debtors and non-debtors may be substantively consolidated. *See* Response at p. 18 (citing

23  *In re Aroonsakool*, 2014 WL 1273696, at *7 (B.A.P. 9th Cir. Mar. 28, 2014) ("Alter ego doctrine

24  and substantive consolidation overlap when the second factor under *Bonham* is at issue"); *In re SK*

25  *Foods, LP*, 499 B.R. 809, 833 (Bankr. E.D. Cal. 2013) ("*Bonham* concluded that the presence of

26

27  _____

28  [6] *See, e.g., Rodriguez v. Old West Exp., Inc.*, 711 F. Supp. 3d 1182, 1190 (E.D. Cal. 2024) ("The alter ego doctrine is an equitable remedy whereby a court may disregard the formal separateness of a corporate entity when doing so prevents fraud or injustice.") (citing California law).

DOCUMENT PREPARED
ON RECYCLED PAPER

2969862816

traditional 'alter ego' factors formed a basis to find that the affairs of the debtor are so entangled such that consolidation will benefit all creditors"). In other words, Ninth Circuit courts already consider whether an alter ego relationship exists when deciding whether a debtor's financial affairs are hopelessly entangled with the target of substantive consolidation. Thus, any "alter ego" exception for substantive consolidation of nonprofit non-debtors would be redundant and does not apply here.

2. *The Committee Has Failed to Adequately Plead a Claim for Substantive Consolidation Under an Alter Ego Theory.*

The Complaint's nonconclusory factual allegations the Committee asserts reflect an alter ego relationship are insufficient to sustain a claim for substantive consolidation for several reasons. <u>First</u>, even if an "alter ego" exception exists for substantive consolidation of nonprofit non-debtors, for the reasons explained above regarding the Committee's Declaratory Judgment claim, the Committee's allegations fall short of the requirements for alter ego status under California law. <u>Second</u>, the Committee's alter ego theory of liability is not supported by the case law on which it relies. For example, in *St. Paul*, the unsecured creditors' committee alleged that the archbishop had plenary power over the diocese, placed directors on the nonprofit non-debtors' boards of directors, had the authority to appoint and remove directors, reviewed and approved various financial and property–related requests by parishes for major decisions like mergers and closures, and other projects above a certain dollar threshold, managed a loan and insurance fund for the benefit of diocesan entities and parishes, shared office space and staff with various non-debtor entities, and played a role in the employment process for parish schools. *See* 888 F.3d at 948-950, 953. Though the Eighth Circuit acknowledged that the committee did not argue for alter ego, the court nevertheless determined that the committee's allegations of financial and other entanglements sounding in alter ego were too sparse to survive dismissal under *Iqbal/Twombly*. *Id.* at 953-54.

The Committee's allegations against the Debtor and Non-Debtor Defendants are remarkably similar to those found lacking in *St. Paul*. For example, the Committee alleges the Bishop's plenary authority over assets within the Diocese (Compl. ¶¶ 36, 70), ██████████████ ██████████████████████ (¶ 38), ████████████████ (¶

79) and ████████████████████████████████████ (¶¶ 44, 48, 49), and ████████████████████████████████████ (¶ 41). The Committee further alleges that the Debtor and Non-Debtor Defendants shared administrative services (¶¶ 33, 79), four directors and officers over a 60 year period (¶¶ 51-55) and a business and mailing address (¶ 50). The Bishop additionally engaged in fundraising for the benefit of the Diocese, including the Non-Debtor Defendants (¶ 93-95), ████████████████████ for Diocesan-wide projects, some of which directly benefitted the Non-Debtor Defendants (¶ 86). ██████████████████████ ████████████████████████████ (¶ 90), a program in which the Non-Debtor Defendants were required to participate (¶ 89). For the same reasons stated in *St. Paul*, these allegations are insufficient to sustain the Committee's alter ego theory of liability.

By contrast, in *SK Foods, LP*, the bankruptcy court found numerous indicia of alter ego, including 100% ownership by the debtor's principal and his various trusts of the corporate defendants, undercapitalization of the corporate defendants, undocumented loans dispensed at the debtor's discretion, related party transactions that resulted in the diversion of the debtor's assets without any supporting explanation, and commingling of assets, liabilities, and finances of the debtor with the corporate defendants. *See* 499 B.R. at 836-37; *see also In re Aroonsakool*, 2014 WL 1273696, at *9 (evidence of an alter ego relationship included the failure to adhere to corporate formalities, lack of any capitalization, personal payments to and from the debtor's bank accounts for the non-debtor entities). No similar allegations have been made here.

Finally, the Complaint is devoid of any allegations of the harm posed to the Non-Debtor Defendants by substantive consolidation. As the bankruptcy court in *St. Paul* aptly recognized, "[s]ubstantive consolidation does not reasonably result in the same benefit for all creditors." *In re Archdiocese of St. Paul & Minneapolis*, 553 B.R. 693, 704 (Bankr. D. Minn. 2016). In fact, "[c]reditors of the non-debtors who have no sexual abuse claims asserted against them would not benefit from substantive consolidation as much as the creditors of non-debtors who do have clergy sexual abuse claims asserted against them because those creditors do not face similar risks of litigation. Substantive consolidation could dilute the recovery of creditors of non-debtors who do not have clergy sexual abuse claims asserted against them." *Id.* This too supports dismissal of the

Document Prepared
on Recycled Paper

2969862816

- 15 -

1    Committee's substantive consolidation claim.

2                                      **III.**

3                                **CONCLUSION**

4          For the foregoing reasons, the Non-Debtor Defendants respectfully request that their

5    Motion to dismiss the Complaint for failure to state a claim for relief under Rule 12(b)(6) be granted

6    with respect to all of the claims asserted in the Complaint.

7

8    Dated: February 26, 2025               REBECCA J. WINTHROP
                                            RYAN E. MANNS (*pro hac vice*)
9                                           JASON I. BLANCHARD (*pro hac vice*)
                                            NORTON ROSE FULBRIGHT US LLP
10
                                            By:  */s/ Rebecca J. Winthrop*
11                                              REBECCA J. WINTHROP
                                                *Attorneys for Roman Catholic Welfare*
12                                              *Corporation of Oakland, Roman Catholic*
                                                *Cemeteries of the Diocese of Oakland, and*
13                                              *Adventus*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Document Prepared
on Recycled Paper

296986281-6