**FOLEY & LARDNER LLP**
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
Geoffrey S. Goodman (admitted *pro hac vice*)
Tel: (312) 832-4515; ggoodman@foley.com
Mark C. Moore (admitted *pro hac vice*)
Tel: (214) 999-4150; mmoore@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor*
*and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. 23-40523 WJL |
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, | Chapter 11 |
| Debtor. | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND, | Adv. Pro. No. 24-04053 |
| Plaintiff, | **REPLY IN SUPPORT OF DEBTOR'S MOTION TO DISMISS ADVERSARY FIRST AMENDED ADVERSARY COMPLAINT** |
| v. | Judge: Hon. William J. Lafferty |
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, ADVENTUS, THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, AND THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND, | Date: June 4, 2025 |
| | Time: 2:00 p.m. |
| | Place: United States Bankruptcy Court |
| | 1300 Clay Street |
| | Courtroom 220 |
| | Oakland, CA 94612 |
| Defendants. | |

## Table of Contents

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 3

A.   Counts 1-3 Must Be Dismissed Because the Committee Cannot State a
Cognizable Claim Based on Alter Ego ................................................................... 3

1.   Counts 1-3 Cannot Survive Unless the Committee Sufficiently Pleads
Alter Ego Under California Law .............................................................. 3

2.   Pleading an Alter Ego Claim Under California Law is a High Bar
That the Committee Cannot Satisfy ......................................................... 3

3.   The Committee Does Not Attempt to Refute That Its Alter Ego
Allegations Are Contrary To California Law ........................................... 9

B.   The Committee's Reliance on the Creditor Expectation Prong of the *Bonham* Test
to Save Counts 1-3 Ignores Applicable Law and This Court's Prior Ruling ................. 9

C.   Count 4 Fails Because the Committee Still Cannot State a Cognizable Basis For
the Debtor's Equitable or Legal Ownership of Non-Debtor Property ......................... 10

III. CONCLUSION ................................................................................................................. 12

4898-1936-4169.2

Table of Authorities

Page(s)

Cases

*In re Aroonsakool*,
    2014 WL 1273696 (B.A.P. 9th Cir. Mar. 28, 2014) .......................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 6

*In re Augie/Restivo Baking Co., Ltd.*,
    860 F.2d 515 (2d Cir. 1988) .................................................................................................. 14

*Begier v. I.R.S.*,
    496 U.S. 53 (1990) ................................................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 4

*In re Brugnara Props. VI*,
    606 B.R. 371 (Bankr. N.D. Cal. 2019) ............................................................................ 6, 7, 9

*Butner v. U.S.*,
    440 U.S. 48 (1979) ................................................................................................................ 11

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995) ................................................................................... 3, 13

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ............................................................................................ 6, 8

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ............................................................................................. 5, 13

*Katzir's Floor & Home Design, Inc. v. MMLS.com*,
    394 F.3d 1143 (9th Cir. 2004) .............................................................................................. 13

*Kelly v. Elec. Arts, Inc.*,
    2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) ..................................................................... 15

*Law v. Siegel*,
    571 U.S. 415 (2014) ................................................................................................................ 3

*Meadows v. Emett & Chandler*,
    99 Cal. App. 2d 496 (Cal. Ct. App. 1950) ........................................................................... 13

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
    901, 686 F.Supp.3d 900 (N.D. Cal. 2023) ................................................................. 5, 14, 15

*Mou v. SSC San Jose Operating Co. LP*,
  415 F. Supp. 3d 918 (N.D. Cal. 2019) ............................................................. 7, 8

*Neilson v. Union Bank of Cal., N.A.*,
  290 F.Supp.2d 1101 (C.D. Cal.2003) ................................................................... 4

*Payoda, Inc. v. Photon Infotech, Inc.*,
  2015 WL 4593911 ................................................................................................ 14

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) (applying California law) ....................... 2, 5, 13, 15

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ............................................................... 4, 8

*Sollberger v. Comm'r*,
  691 F.3d 1119 (9th Cir. 2012) ............................................................................. 11

*In re SK Foods, LP*,
  499 B.R. 809 (Bankr. E.D. Cal. 2013) ........................................................ 6, 7, 10

*Sonora Diamond Corp. v. Superior Ct.*,
  83 Cal. App. 4th 523 (Cal. Ct. App. 2000) ....................................................... 3, 9

*Tomaselli v. Transamerica Ins. Co.*,
  25 Cal. App. 4th 1269 (1994) ..................................................................... 5, 14, 15

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (2009) ............................................................................ 13

*Walsh v. Kindred Healthcare*,
  798 F. Supp. 2d 1073 (N.D. Cal. 2011) ................................................................ 4

*Wimbledon Fund, SPC v. Graybox, LLC*,
  2016 WL 7444709 (C.D. Cal. 2016) ...................................................................... 4

Statutes

11 U.S.C. § 303 .......................................................................................................... 1, 3

11 U.S.C. § 541 .................................................................................................... 2, 10, 11

11 U.S.C. § 541(a) ....................................................................................................... 10

11 U.S.C. § 105 ........................................................................................................... 1, 9

11 U.S.C. § 105(a) ......................................................................................................... 3

Rules

Fed. R. Bankr. P. 7001(2), (9)..................................................................................... 10

Fed. R. Civ. P. 8 ........................................................................................................... 4

Fed. R. Civ. P. 9(b) ...................................................................................................... 4

REPLY ISO DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

4898-1936-4169.2

The Roman Catholic Bishop of Oakland, a California corporation sole and the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case"), hereby files this reply in support of its *Debtor's Motion to Dismiss First Amended Adversary Complaint* [Docket No. 41] (the "Motion to Dismiss"), and in response to the *Omnibus Response of the Official Committee of Unsured Creditors to (I) Debtor's Motion to Dismiss First Amended Adversary Complaint and (II) Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus to Dismiss the Official Committee of Unsecured Creditors' First Amended Adversary Complaint* [Docket No. 45] (the "Response").[1]

## I.

## INTRODUCTION

The Court's April 22, 2025 Opinion dismissing the Committee's Original Complaint held that the Supreme Court's ruling in *Law v. Siegel*, and the provisions of 11 U.S.C. § 303, bar substantive consolidation of a non-debtor, non-profit entity solely under § 105 of the Bankruptcy Code. The Court left the Committee a narrow window to attempt to re-plead: a claim based on alter ego under California law. Lacking the ability to plead any additional facts, the Committee merely repackaged the same allegations from its Original Complaint into the nearly identical Counts 1-3 of the Amended Complaint against each of the three Non-Debtor Catholic Entity defendants. Although there are no new material factual allegations, the Committee now expressly asserts in the Amended Complaint that the same facts alleged before are sufficient to support an alter ego finding under California law. They are not.

In the face of extensive case law cited in the Motion to Dismiss, which demonstrates that the Committee's attempt to repackaged its substantive consolidation complaint based on alter ego must fail, the Committee simply ignores the law and doubles down on the same allegations this Court already found to be insufficient. The bulk of the Committee's Response is devoted to a recitation of the allegations that the Committee asserts are sufficient to support various of the factors established by California Law. Fatal to the Committee's arguments is its failure to even address, much less rebut, the many cases cited in the Debtor's Motion to Dismiss that expressly reject nearly every argument put forward by the Committee.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

The Response likewise does nothing to rebut a more fundamental problem pointed out in the Motion to Dismiss: Alter ego requires that the individual factors, taken together, amount to "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (applying California law). There is simply no way to draw an inference from the facts alleged in the Amended Complaint, even if taken as true, that RCWC, RCC, or Adventus is a mere instrumentality of the Debtor. In its Response, the Committee makes no effort to explain how the factual allegations it asserts add up to the kind of "pervasive authority" required by the Ninth Circuit to meet the "mere instrumentality" requirement. Indeed, the Committee does not even address the applicable cases cited by the Debtor. Instead, it relies on only two cases, each of which is wholly inapplicable beyond listing applicable factors. A review of the facts of these cases only serves to demonstrate the gulf between the circumstances here, even as alleged by the Committee, and the circumstances where courts have found alter ego to be applicable.

Finally, in Count 4, despite the Court having already rejected the Committee's prior attempts to bring declaratory relief claims under Bankruptcy Code Section 541 and Federal Rule of Bankruptcy Procedure without pleading a legal theory for the Debtor's interest in property, the Committee tries the same failed approach again. Albeit on a more limited basis, as to only the School Funds invested by RCWC in the Deposit and Loan Fund ("DLF") and Endowment Pool previously administered by the Debtor and now administered by OPF. The Committee still, even on its second try, cannot articulate a cognizable legal theory supporting its bare assertion that the Debtor held legal or equitable title in the School Funds on the petition date. Count 4 should also be dismissed with prejudice.

The Committee's failure to adequately plead either cause of action should be taken in the context of this Chapter 11 Case. The Committee has already tried and failed once to plead a claim that would bring the assets of the Non-Debtor Catholic Entities into the estate. The Chapter 11 Case has been pending for nearly two years, and the Debtor has provided the Committee with many thousands of documents in response to the Committee's extensive requests for information. Despite access to all of these documents, the Committee has still utterly failed to state a cognizable claim for relief under alter ego or any other theory. This Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

**A. Counts 1-3 Must Be Dismissed Because the Committee Cannot State a Cognizable Claim Based on Alter Ego**

**1. Counts 1-3 Cannot Survive Unless the Committee Sufficiently Pleads Alter Ego Under California Law**

The Court's Opinion dismissing the Original Complaint is clear: The Committee's claims to consolidate the Non-Debtor Catholic Entities into the estate cannot survive unless the Committee can plead alter ego under California law. Leave to amend was granted for the express purposes of allowing the Committee to attempt to plead a claim based on alter ego that it had failed to adequate plead in its Original Complaint. Because the Committee has failed to sufficiently plead alter ego, as set forth below, Counts 1-3 must be dismissed.

**2. Pleading an Alter Ego Claim Under California Law is a High Bar That the Committee Cannot Satisfy**

Because alter ego "is recognized as an extreme remedy," "[c]ourts will pierce the corporate veil only in exceptional circumstances." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (internal quotations omitted). In order to plead alter ego, plaintiffs must overcome "a general presumption in favor of respecting the corporate entity." *Id.* In other words, alter ego requires overcoming the ordinary legal fact that "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (Cal. Ct. App. 2000).

**a. The Committee Misstates the Applicable Pleading Standard for Alter Ego Relief**

The Committee applies the wrong pleading standard to its alter ego claims. (*See* Response, p. 2-3). In the Response, it argues that it merely needs to meet the "short and plan statement of the claim" standard under F.R.C.P. 8, and therefore that the Amended Complaint "does not need detailed factual allegations." (*Id.*, citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In making this argument, the Committee simply ignores precedent in the Ninth Circuit, and specifically in the Northern District, applying a heightened pleading standard to alter ego claims. *See Walsh v. Kindred Healthcare*, 798 F.

Supp. 2d 1073, 1082 (N.D. Cal. 2011) (applying Rule 9 in in dismissing claims based on alter ego). It is true that Courts in the Ninth Circuit are split on whether the heightened pleading standard of Fed. R. Civ. P. 9(b) applies to pleading alter ego liability. *See Wimbledon Fund, SPC v. Graybox, LLC*, 2016 WL 7444709 (C.D. Cal. 2016) (discussing split and collecting cases). As to the fraud element of the alter ego test, however, "a majority of courts in this Circuit have found that plaintiffs must satisfy Rule 9(b)'s particularity standard." *Id*. The District Court in in *Walsh* held that "[c]onclusory allegations of alter ego status are insufficient." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011). Thus, in order to plead a claim based on alter ego, "a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014); *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1116 (C.D. Cal.2003). As set forth below, the Committee has failed to meet this standard.

> **b.** **The Committee Fails to Respond to Prevailing Case Law Cited in the Motion Which Expressly Rejects the Committee's Factual Arguments**

Shockingly, the Committee does not even attempt to address the extensive Ninth Circuit and California case law identified in the Motion to Dismiss. *See* Motion, p. 11-15. Rather than respond to the controlling case law cited by the Debtor, the Committee merely recites its pleading in the Amended Complaint of the same insufficient facts it pled in the Original Complaint. *See* Response, p. 4-10. While the Committee attempted to tie its allegations as to each Non-Debtor Catholic Entity to the specific factors for alter ego, what that effort ultimately reveals is that each and every factual allegation put forward by the Committee either (1) has been expressly rejected by the prevailing legal authority, or (2) fails to actually support the applicable factor. Attached hereto as **Exhibit A** is a table summarizing each factor the Committee argues supports an alter ego finding, the factual allegations that the Committee asserts support that factor, applicable case law rejecting similar factual allegations as insufficient, and deficiencies in the Committee's efforts to plead facts support each factor.

The Committee's failure to respond to or even address extensive Ninth Circuit case law directly on point and cited in the Motion goes beyond ignoring cases rejecting nearly all of the Committee's individual factual arguments. Even more devastating to the Committee's attempt to plead alter ego is its

failure to address the fundamental requirement of applicable law that the factors taken together show "that the parent controls the subsidiary to such a degree as to render the latter the ***mere instrumentality*** of the former." *Ranza*, 793 F.3d at 1073 (emphasis added); *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 901, 686 F.Supp.3d 900, 911 (N.D. Cal. 2023). The cases cited by the Debtor in the Motion stand for the proposition that the test requires not merely checking off some number of factors, but that those factors establish "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)); *see also, Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994) (evidence "that the parent company owned 100 percent of the subsidiary's stock, it shared office space and policy manuals with the subsidiary, they had some common personnel, and they had consolidated financial statements" fell "woefully short of the showing on which alter ego normally rests.").[2]

Further, it is important to note what is entirely missing from the Committee's allegations: any material factual allegation of a lack of observance of corporate formalities by any of the defendants. The Committee asserts that the Debtor indirectly controls the Non-Debtor Catholic Entities through its alleged ability to appoint board members. It does not, however (because it cannot), allege any facts suggesting that the respective boards of the Non-Debtor Catholic Entities failed to meet or failed to exercise their independent judgment, or that corporate actions were taken by any Non-Debtor Catholic Entity without appropriate corporate authorization. In an attempt to plead around this crucial defect, the Committee includes a bare allegation that each Non-Debtor Catholic Entity "does not follow property corporate formalities in making decisions." Am. Compl., ¶¶ 120(i), 131(i), 141(i). In the absence of any supporting facts, this conclusory allegation is meaningless. *See*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (The complaint must offer more than "naked assertions devoid of further factual enhancement."); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (pleading based on "labels and conclusions" will not survive dismissal).

---

[2] In this case, the Debtor is neither a parent nor subsidiary of the Non-Debtor Catholic Entities, since each is a non-profit corporation without equity ownership.

REPLY ISO DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

Much like the plaintiff in *Tomaselli*, the Committee has only pointed to various facts showing interconnectedness of affiliated corporations, and in doing so, has fallen "woefully short" of pleading alter ego. Ultimately, if the Committee's arguments were sufficient, virtually every group of affiliated entities in California could be collapsed into a single alter ego. That is not and cannot be the correct result.

### c. The Two Cases the Committee Relies on Do No Support Its Position

While ignoring all of the applicable case law cited by the Debtor, the Committee relies on only two cases to support its position that the facts it alleges are sufficient to plead a claim based on alter ego: *In re Brugnara Props. VI,* 606 B.R. 371, 380 (Bankr. N.D. Cal. 2019), and *In re SK Foods, LP,* 499 B.R. 809, 833–34 (Bankr. E.D. Cal. 2013). Neither case supports the Committee's position, because each relies on very different factual circumstances from those of the Debtor and the Non-Debtor Catholic Entities.

That *Brugnara Properties* is not applicable should be immediately apparent on reviewing the underlying facts of the case. *See Brugnara Props.,* 606 B.R. at 374-75. The case involved an assertion by relevant taxing authorities that an LLC was the alter ego of its members and officers, Luke and Kay Brugnara, where, among other things, the sole asset of the LLC was a home in Sea Cliff that served as the Brugnara's personal residence.[3] *See id.* It was undisputed that the Brugnaras had repeatedly withdrawn cash by borrowing against the house that was the debtor LLC's sole property and charged personal expenses for hotels, retail shopping and dental expenses to its debit card. *Id.* at 381. Further, the debtor LLC did " not observe corporate formalities," and had no income or business operations of any kind. *Id.* at 382. Taking all of this together, it was "difficult to construe Debtor as anything other than a shell company used to hold title to [the house]." *Id.* As Judge Montali found, these egregious facts are the kind of "exceptional circumstances" that support alter ego liability. *Id.* They are also dramatically different from the circumstances here, where the Non-Debtor Catholic Entities have professional boards, keep minutes, observe corporation formalities, and maintain separate, professionally accounted and audited financial statements.

---

[3] That the plaintiffs were taxing authorities is important because as Judge Montali recognized claims of taxing authorities create a limited exception to the general ban on reverse veil piercing under California law discussed in the Motion on pages 17-18. *See*, *Brugnara Props.,* 606 B.R. at 376-380.

4898-1936-4169.2

The *SK Foods* decision provides no more support for an alter ego finding under the circumstances of this case. *SK Foods* was a classic alter ego case of an individual using multiple corporate shells as a personal piggy bank without distinguishing between their and his assets and without observing any corporate formalities. *See, SK Foods,* 499 B.R. at 839-840, 841-843. The facts showed that assets were so commingled and not properly accounted for to the point that it was impossible for the SK Foods debtors and defendants to "reconcile their intercompany balances." *Id.* at 839-840. Beyond merely exercising control over the debtors and other defendants, the principal among other things transferred assets between entities without any observance of formalities, used debtor assets to pay his personal divorce settlement, undercapitalized the defendant entities, and routinely had one entity pay the debts of another. *Id.* at 841-843. Again, this simply does not support applicable of alter ego to the Debtor and Non-Debtor Catholic Entities, where the interrelationships are no more than would be found with any typical group of professionally-managed corporate affiliates.

### d. The Committee Provides No Substantive Argument, and Pleads No Facts, to Support the Required Inequitable Result Prong of Alter Ego

As established by the extensive case law cited in the Motion to Dismiss, an alter ego claim ***must*** be dismissed if the plaintiff does not allege facts supporting the fraud or injustice prong. *See, e.g., Mou v. SSC San Jose Operating Co. LP,* 415 F. Supp. 3d 918, 931 (N.D. Cal. 2019) (dismissing alter ego claims based on a failure to allege facts supporting the fraud or injustice prong). The Committee does not dispute this well-established requirement and yet it identifies no actual facts to support its bare allegation that recognizing the corporate separateness of the Non-Debtor Catholic Entities would result in a fraud or injustice. *See* Response, p. 11.

The Committee's only response is to double down on its generalized argument that the Debtor is somehow "using" the Non-Debtor Catholic Entities to shield assets from creditors. *See* Response, p. 11. There are numerous essential flaws in this argument. ***First***, it simply ignores the law cited in the Motion to Dismiss requiring actual pleading of facts, not merely a conclusion or formulaic recitation of the elements. *See, Sandoval v. Ali,* 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (alter ego not properly plead where complaint lacked facts regarding fraud or inequitable request of recognizing corporate form);

*Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1041 (9th Cir. 2011). ***Second***, it is directly contrary to the District Court's holding in *Mou* that general allegations that defendants operated as a single business for the purpose of evading liability and hiding money were "too vague and conclusory to support a plausible inference that there has been an abuse of corporate privileges." *See, Mou*, 415 F. Supp. 3d at 931.

*Third*, if accepted, it would prove too much. Essentially, the Committee's argument boils down to "the Non-Debtor Catholic Entities have assets which are not available to creditors of the Debtor if corporate separateness is recognized, therefore there is inherently an injustice in recognizing corporate separateness." *See,* Response, p. 11. Beyond being facially absurd, if the mere fact of the alleged alter ego defendant holding assets that are not available to creditors in the absence of the alter ego remedy was sufficient to satisfy the fraud or injustice prong of the test, it would render that essential prong meaningless because it would always be satisfied. ***Fourth***, it is also directly contrary to California law (again cited in the Motion, but simply ignored in the Response) that the potential difficulty a plaintiff may have in collecting a judgment absent an alter ego finding is not itself an inequitable result. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014).

Further, there is no factual support for the bare allegation that the Debtor is somehow using the Non-Debtor Catholic Entities to "shield" assets. This both assumes the legal conclusion of alter ego and is not supported by the facts alleged. Indeed, the Non-Debtor Catholic Entities have been in existence, and owned their assets that the Committee now seeks access to, for decades. The Committee has acknowledged that RCWC was formed in 1962 to operate the schools in the Diocese. *See* Original Compl. ¶ 54.[4] It is undisputed that RCC and Adventus have also operated for decades.[5] To suggest that they are being used by the Debtor to shield assets from the creditors in this case, when they were operating and owned their assets for decades prior to AB218, is nonsensical. The Committee has not alleged that the Debtor

---

[4] This fact is conspicuously absent from the Amended Complaint, presumably because the Committee knows it undermines the Committee's arguments.

[5] Indeed, if necessary, the Court can certainly take judicial notice of the fact that both RCC and Adventus were formed in 1995, as shown in the public records of the California Secretary of State, available at https://bizfileonline.sos.ca.gov/search/business.

transferred any assets to any of the Non-Debtor Catholic Entity defendants in order to shield them from creditors. Beyond the reality that the Committee cannot allege this because it has not occurred, the remedy would be an action for fraudulent transfer, not alter ego. The Committee simply wants to turn the routine existence of affiliated entities with their own separate assets into a nefarious scheme to hide assets.

### 3. The Committee Does Not Attempt to Refute That Its Alter Ego Allegations Are Contrary To California Law

As set forth in the Motion, the Committee's alter ego allegations are contrary to applicable California law both because (1) the fundamental purpose of alter ego to hold "the equitable ownership of a corporation liable for the actions of the corporation" where the applicable test met (*Sonora Diamond Corp.*, 83 Cal. App. 4th at 538) is inconsistent with applying alter ego to non-profit corporations, and (2) because any attempt to argue that the Non-Debtor Catholic Entities are functionally subsidiaries because they are controlled by the Debtor would be "reverse veil-piercing," a legal theory rejected in California.[6] The Committee entirely fails to respond to this argument, effectively conceding it.

## B. The Committee's Reliance on the Creditor Expectation Prong of the *Bonham* Test to Save Counts 1-3 Ignores Applicable Law and This Court's Prior Ruling

The Committee cannot rely on the Creditor Expectation Test under *Bonham* as a separate basis for substantive consolidation. As set forth in the Motion to Dismiss, the Committee's attempt to rely on the Creditor Expectation Test runs afoul of this Court's prior ruling that the Court cannot substantively consolidate a non-debtor, non-profit entity solely under § 105 of the Bankruptcy Code, under the Supreme Court's ruling in *Law v. Siegel*. *See* Motion, p. 18-19. In its Response, the Committee fails to even address this issue, instead repeating the same arguments it made unsuccessfully in connection with the Original Complaint. *See* Response, p. 11-13; *see also*, Docket No. 19, p. 18-19, 20-23 (making the same arguments).

Even to the extent the arguments the Committee makes were somehow not barred by the Court's prior order and *Law v. Siegel*, the Amended Complaint still fails to satisfy the Creditor Expectations Test

---

[6] As described in the *Brugnara Properties* case described above, 606 B.R. 371, there is a limited exception where alter ego is asserted by a taxing agency, which of course is not applicable here.

4898-1936-4169.2

for all the reasons set forth on Pages 18-20 of the Motion to Dismiss, which need not be repeated here.[7] The Committee relies almost entirely on the 2007 Series Bond documents as subsequent 2017 Credit Agreement. *See*, Response, p. 11-13. Nothing in the Response rebuts the argument in the Motion to Dismiss that this reliance is fundamentally flawed because those documents in fact expressly demonstrate that the creditors in question recognized the corporate separateness of the Non-Debtor Catholic Entities. *See id.*; Motion, p. 18-20.

## C. Count 4 Fails Because the Committee Still Cannot State a Cognizable Basis For the Debtor's Equitable or Legal Ownership of Non-Debtor Property

As argued in the Motion, the Complaint fails to assert any cognizable legal theory for the Committee's bare assertion that the Debtor holds equitable title to the School Funds on deposit at OPF. *See*, Motion, p. 20-21. Nowhere in the Response does the Committee even attempt to identify a cognizable legal theory. *See*, Response, p. 15-16. Instead, the Committee merely points once more to Section 541 of the Bankruptcy Code, which establishes that property of the estate includes all legal and equitable interests in property at the petition date, and to Rule 7001, which requires an adversary proceeding for adjudication of whether property belongs to the estate. *See*, 11 U.S.C. § 541(a), F.R.B.P. 7001(2), (9). These authorities, however, merely establish (1) that if the Committee could show that the Debtor held a legal or equitable interest in the School Funds as of the petition date, that interest would be property of the estate;[8] and (2) that an adversary proceeding is the proper procedural vehicle.

What is missing from the Committee's argument is the necessary underlying legal theory supporting the Debtor's ownership of a legal or equitable interest in the School Funds that as of the petition date were held by OPF for the benefit of RCWC. While property of the estate is defined by Section 541, the underlying property interest must be created and defined by state law. *Butner v. U.S.*, 440 U.S. 48, 55

---

[7] The Committee improperly relies on a burden-shifting argument, based on *In re Aroonsakool*, 2014 WL 1273696, at *8 (B.A.P. 9th Cir. Mar. 28, 2014) and *In re SK Foods*, 499 B.R. at 834. These cases are directed to the ultimate evidentiary burden, and irrelevant to the Committee's obligation to plead facts sufficient to support a claim for relief to survive a motion under Rule 12(b)(6). For all the reasons stated in the Motion, the Committee has failed to meet its burden.

[8] While the Debtor held neither a legal nor an equitable interest in the School Funds as of the petition date, it is worth noting that the property of the estate would be only to the extent of that interest. As recognized by the Supreme Court, where a debtor holds bare legal title to property without an equitable interest, the property itself is held in trust and therefore not property of the estate. *See, e.g., Begier v. I.R.S.*, 496 U.S. 53, 58-59 (1990) (finding that because the debtor did not hold an equitable interest in property, he held that property in trust for another, and so that interest was not "property of the estate").

REPLY ISO DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

4898-1936-4169.2

(1979). In the face of the arguments of both the Debtor and the Non-Debtor Catholic Entities, the Committee completely failed to point to any applicable law supporting its assertion that the Debtor held a legal or equitable interest at the petition date. The only authority cited by the Committee at all is a Ninth Circuit case addressing when a transaction characterized as a loan should instead be treated as a sale for tax purposes. *See*, *Sollberger v. Comm'r*, 691 F.3d 1119, 1124 (9th Cir. 2012). Nowhere in *Sollberger* is there even a hint of a suggestion that the test it articulates applies to circumstances beyond evaluating when a sale occurs for tax purposes. *See id.* Even if there were any such suggestion, the factors the Committee cites only undermine its argument: the intention of the parties (clearly that the RCWC deposits in the DLF belonged to the RCWC schools), and who has possession of the property (as of the petition date, OPF, not the Debtor).[9]

There is simply no legal or factual basis for the Committee's attempt to backdoor its way into substantive consolidation by requesting a declaration pilfering the assets of a separate legal entity. The Court already found that the Committee's attempts to use Section 541 to assert equitable ownership of assets of non-debtors failed to state a claim for relief. The Committee's attempt to plead the same theories in Count 4 should be dismissed with prejudice.

///

///

---

[9] The Response unfortunately appears to deliberately misstate the Motion, in suggesting that "the Debtor concedes that the transfer of the School Funds to OPF did not alter this status" in reference to the pre-OPF DLF and Endowment Pool bank accounts and investment accounts being titled in the name of the Debtor. *See*, Response, p. 15. The full sentence from the Motion reads: "Moreover, the Debtor has consistently maintained that the School Funds have always been held for the benefit of RCWC in trust; and the transfer of the School Funds to OPF did not alter this status." Motion, p. 20. Clearly the phrase "did not alter this status" refers to the School Funds being held in trust for RCWC, not to the Funds being held in accounts titled in the name of the Debtor, which is not even mentioned in the Motion. Worse yet, the Committee _knows_ that the accounts holding the School Funds after the transfer to OPF are not in the name of the Debtor, because it has the applicable bank records.

4898-1936-4169.2

## III.

## CONCLUSION

For the reasons set forth above and in its Motion to Dismiss, the Debtor submits that the Court should dismiss the Amended Complaint and this Adversary Proceeding, with prejudice.

Dated:  June 2, 2025

FOLEY & LARDNER LLP


*/s/ Shane J. Moses*
Shane J. Moses

Attorneys for the Debtor
The Roman Catholic Bishop of Oakland

**EXHIBIT A**
**(Table summarizing alter ego factors cited in Amended Complaint, facts alleged in support, applicable case law, and deficiency of allegations)**

| Factor: Failure to Maintain Arm's Length Relationships Among Related Entities | |
| --- | --- |
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| Debtor ability to appointment of Directors. <br> As to RCWC (p.5), RCC (p.7), Adventus (p.9) | *Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) (alter ego was not demonstrated where a parent "placed several of its directors on the subsidiary's board.") <br> *Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499 (Cal. Ct. App. 1950) ("Mere ownership of all the stock and control and management of a corporation by one or two individuals" not sufficient.) <br> *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) ("Total Ownership" insufficient.) <br> *Katzir's Floor & Home Design, Inc. v. MMLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("[The] mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law"). |
| Budgetary oversight or approval of large expenditures. <br> As to RCWC (p.5), Adventus (p.9) | *Ranza*, 793 F.3d at 1074 (control over budget, including approval authority for large purchases, found insufficient). |
| Lease of real property from Debtor to RCC. <br> As to RCC (p.7). | The mere fact that RCC leases the cemetery and mortuary property from the Debtor does not support an inference that the relationship is not arm's length. The Committee notably does not allege that the leases are not fully documented or on other than market terms. |
| Factor: Shared Officers and/or Directors | |
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| Overlap of some officers and directors. <br> As to RCWC (p.5), RCC (p.7), Adventus (p.9). | *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) ("Courts have repeatedly held that such factors do not justify piercing the corporate veil."). <br> *Meadows*, 99 Cal. App. 2d at 499 ("Control and management of a corporation by one or two individuals is not of itself sufficient."). <br> *Ranza*, 793 F.3d at 1073 (shared management personnel insufficient, even when combined with total ownership). <br><br> Where courts have articulated unity of officers and directors as a factor supporting alter ego, it has been based on "***identical*** directors and officers." *See Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1342 (2009) (emphasis added). |

| Factor: Same Office or Business Location | |
|---|---|
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| The Debtor and Non-Debtor Catholic Entities share the same business and mailing address in Oakland. As to RCWC (p.5), RCC (p.8), Adventus (p.9). | *Motul*, 686 F.Supp.3d at 911 ("shared headquarters, facilities, finances, website, email address, phone number, employees and customers" insufficient) (quoting *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *2). *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994) (allegations including shared office space "woefully short" even when combine with numerous other shared resources). |

| Factor: Shared Employees | |
|---|---|
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| The Debtor and RCWC share a central administrative staff through the Chancery.[10] As to RCWC (p.5), RCC (p.8), Adventus (p.9). | *Tomaselli*, 25 Cal. App. 4th at 1285 ("some common personnel" woefully short). *Motul*, 686 F.Supp.3d at 911 ("shared headquarters, facilities, finances, website, email address, phone number, employees and customers" insufficient) (quoting *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *2). |

| Factor: Commingling of Funds or Other Assets | |
|---|---|
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| Assets in the Deposit and Loan Fund were historically comingled with those of the Debtor. As to RCWC (p.6), RCC (p.8). | *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 519 (2d Cir. 1988) ("commingling…can justify substantive consolidation only where the time and expense necessary even to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all the creditors, or where no accurate identification and allocation of assets is possible." (cleaned up)). Notably, the Committee never attempts to refute the Debtor's numerous sworn statements that assets in the DLF were meticulously accounted for. Indeed, the Amended Complaint is devoid of any allegations that funds of RCWC held in the DLF were not fully accounted for at all times. Further, the Committee reiterates the allegation that RCC assets were comingle in the DLF and transferred to OPF, despite the Debtor pointing out in the Motion that this is simply not true.[11] |

---

[10] Although allegations in the complaint must be taken as true, the Debtor notes that the Amended Complaint vastly overstates the overlap of employees between the Debtor and RCC and RCWC.

[11] The Committee does argue that the Debtor improperly relies on facts outside the allegations of the Amended Complaint. While the Debtor is well aware of the limitations of Rule 12(b)(6) motions, it is troubling that the Committee would rely on this as a basis to double down on factual allegations it knows are not accurate based on not only the sworn statements on file, but also on the extensive financial disclosures provided to the Committee over the course of the case.

REPLY ISO DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

4898-1936-4169.2

| Factor: One Entity Holding Out That it is Liable for the Debts of Another | |
| --- | --- |
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| The Debtor represented that it could call on assets of the Non-Debtor Catholic Entities to pay debt service on the Series 2007 Bonds and PNC debt.<br>As to RCWC (p.6), RCC (p.8), Adventus (p.10). | *See, Ranza*, 793 F.3d at 1075 (extensive "macromanagement" and interconnectedness between corporate entities is insufficient to support alter ego claims where the entities observed separate corporate formalities).<br><br>The Amended Complaint omits the crucial fact that each Non-Debtor Catholic Entity was a guarantor. The suggestion that a corporate guarantee is a basis for an alter ego finding is facially absurd. These allegations are contradicted by the applicable documents. |
| The Debtor represented to prospective creditors that entities are "interdependent" and shared infrastructure is "crucial to integral diocesan operations."<br>As to RCWC (p.6), RCC (p.8), Adventus (p.10). | *See, Ranza*, 793 F.3d at 1075 (extensive "macromanagement" and interconnectedness between corporate entities is insufficient to support alter ego claims where the entities observed separate corporate formalities).<br>*Motul*, 686 F.Supp.3d at 911 (allegations of interdependence including "shared headquarters, facilities, finances, website, email address, phone number, employees and customers" were insufficient).<br>*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994) (extensive overlap in operations was "woefully insufficient"). |
| Shared website including a "Diocesan Directory."<br>As to RCWC (p.6), RCC (p.8-9). | *Motul*, 686 F.Supp.3d at 911 (allegations including <u>shared website</u>, email address, and phone number were insufficient). |
| Factor: Treatment by One Entity of the Other's Assets as its Own | |
| **Facts Alleged** | **Applicable Case Law / Deficiency of Allegations** |
| Transfer of DLF and Investment Fund Assets to OPF.<br>As to RCWC (p.7). | The allegation that the Debtor transferred RCWC's assets to OPF without OPF's consent is simply false, as shown by the underlying agreements. The Investment Account Agreement, dated April 1, 2023, by and between RCWC and OPF, is attached as Exhibit 7 to the declaration of Ryan Manns in support of the Non-Debtor Catholic Entities motion to dismiss, Docket No. 36 (the "<u>Manns Declaration</u>").[12] |
| Debtor made representations of control over assets in Series 2007 Bond offering and PNC Credit Agreement. | *See, Ranza*, 793 F.3d at 1075 (extensive "macromanagement" and interconnectedness between corporate entities is insufficient to support alter ego claims where the entities observed separate corporate formalities). |

---

[12] There is no presumption of truth where allegations are contradicted by the documents on which they are based. *Kelly v. Elec. Arts, Inc.*, 2015 WL 1967233, at *8 (N.D. Cal. Apr. 30, 2015)).

REPLY ISO DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

4898-1936-4169.2

| As to RCWC (p.7), RCC (p.9), Adventus (p.10). | As noted above, the Amended Complaint omits the crucial fact that each Non-Debtor Catholic Entity was a guarantor. The suggestion that a corporate guarantee is a basis for an alter ego finding is facially absurd. Further, the Committee conflates statements in the Series 2007 Bond documents regarding juridic persons under the Bishop's control (the Churches) with the Non-Debtor Catholic Entities. Ultimately, the allegations that the credit documents show the Bishop's authority to use the assets of Non-Debtor Catholic Entities for the benefit of the Debtor at will are contradicted by the documents themselves.[13] |
| --- | --- |

---

[13] The Series 2007 Bond documents and PNC Credit Agreement are attached to the Manns Declaration.

REPLY ISO DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

4898-1936-4169.2